MICHAEL L. CROWLEY (117008)
Crowley Law Group, A Professional Corporation
600 "B" Street, Suite 2050
San Diego, CA 92101
(619) 238-5700

Attorney for Defendant  #23
DANIEL ORTEGA

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA
(Honorable William Q. Hayes)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> DANIEL ORTEGA (23), et al., ) <br><br> Defendant. ) | Case No.: 15CR2310-WQH <br><br> POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS WIRE AND ELECTRONIC EVIDENCE <br><br> DATE: August 1, 2016 <br> TIME: 2:00 p.m. <br> PLACE: Courtroom of the Honorable William Q. Hayes |

**I.**

## FACTUAL STATEMENT

The following factual statement is based on information contained in

the indictment and discovery received to date. Other than indicated,

defendant does not accept or adopt any part of the statement which may be subject to contradiction, enlargement or retraction through evidentiary findings at hearings and trial.

The defendant is only charged in Count 2 of the indictment with a violation of Title 18, U.S.C. sec. 1955 - Illegal Gambling Business, although he is also named in Forfeiture Allegation 2. Wiretaps were authorized by this Court on September 23, 2014 and re-authorized on October 22, 2014.

## II.

## ARGUMENT

**A. The defendant has standing under both the Fourth Amendment and Title III to challenge the evidence gathered through the interceptions because he was either the target or was intercepted on each, and as such, is an "aggrieved person."**

As a threshold matter, an "aggrieved person," as defined in 18 U.S.C. 2510(11) possesses sufficient standing to move for suppression of evidence derived from electronic surveillance. 18 U.S.C. 2518(10)(a). Specifically, Section 2518(10)(a) provides: "Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer agency, regulatory body or other authority of the United States, a State, or

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to 18 U.S.C. Section 2510 or evidence derived therefrom, on the grounds that – (I) the communication was unlawfully intercepted…" 18 U.S.C. Section 2518(10)(a)(2006).

An "aggrieved party" is a defined as a person who was a party to any intercepted wire, oral, or electronic communication, or a person against whom the interception was direction. 18 U.S.C. Section 2510 (10, 11). The United States Supreme Court addressed the question of who has standing to contest the use of evidence derived from allegedly illegal wiretapping in *Alderman v. United States* (1969) 394 U.S. 165. In *Alderman*, the Court held that a defendant has standing to contest the use of evidence derived from eavesdropping only if the defendant was a party to an intercepted conversation or "if the defendant himself was not intercepted" he owned the premises upon which the interception had occurred. Id. at 176-178.

In the instant case, as set forth above, defendant's conversations were allegedly intercepted on multiple occasions, according to the government. Defendant DANIEL ORTEGA, therefore, has standing to challenge the legality of the wiretap evidence that the government intends

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to rely upon at trial.

**B. The communications should be suppressed because the Affidavits failed to set forth facts showing that normal investigative procedures had failed or appeared unlikely to succeed if tried.**

The government failed to show the requisite necessity to obtain a wiretap.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. Section 2510 prohibits all wiretapping and electronic surveillance except pursuant to carefully specified procedures. The procedural steps set forth in the statute "require strict adherence, and utmost scrutiny must be exercised to determine whether wiretap orders conform with Title III." *United States v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir. 2001).

The procedural step at issue in this motion is the required showing of necessity for the wiretaps; its purpose is to "limit the use of wiretaps, which are highly intrusive." *United States v. Bennett*, 219 F.3d 1117, 1121 (9th Cir. 2000). Moreover, the Ninth Circuit has held that there is a statutory presumption against granting a wiretap application that the government may only overcome by showing necessity. *United States v. Ippolito,* 774

4

F.2d 1482, 1486 (9th Cir. 1985).

Title 18 U.S.C. Section 2518(1)(c) mandates that each wiretap application include: "a full and complete statement as whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed or tried or to be too dangerous." Additionally, Title 18 U.S.C. 2518(3)(c) requires that the issuing judge determine whether the wiretap application contains facts that support a finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."

Taken together, sections 2518(1)(c) and (3)(c) require a full and complete statement establishing necessity. Moreover, specificity in the wiretap application is required to prevent the government from making general allegations, thereby sidestepping the necessity in the particular investigation for which the wiretap is sought. *Ipppolito, supra*, 774 F.2d at 1486. The affidavit must show with specificity why in this particular investigation ordinary means of investigation will fail. *Id.*

/ / /

/ / /

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Application and Affidavit of 9/24/14 for TF#1Hanson & TF#3/Hanson Email:**

This application sought authorization to intercept, for a thirty day period, telephone number (310) 750-8123, "subscribed to Owen M. Hanson," and email rockstarbets®gmail. com. These were labeled "TF#1/Hanson" and "TF#3Hanson" by affiant John J. Smaldino.

The stated goal of the wiretap is as follows:

"(1) to fully reveal the manner in which the TARGET
SUBJECTS and others as yet unknown participate
in the CRIMINAL ACTIVITY; (2) to fully reveal the
identities of their co-conspirators, their places of
operation, and the full scope and nature of the
conspiracy, including the aspects of the illegal
activity discussed in the CRIMINAL
COMMUNICATIONS; (3) to disrupt and completely
dismantle the criminal enterprise and illegal
gambling business operated by the TARGET
SUBJECTS; and (4) to develop sufficient
admissible evidence against the TARGET

6

1
2
3
4

> SUBJECTS and all their co-conspirators to support
>
> their arrests and convictions with proof of guilt
>
> beyond a reasonable doubt."

5
6
7
8
9
10
11
12
13
14

This goal is as open ended as could be imagined. Its goal is to reveal criminal activity. On its face, this defeats the limitations dictated by the statute and case law. *See, Bennett*, *supra,* 219 F.3d at 1121. With such an open ended goal, there is no amount of other law enforcement activities that could ever achieve the goal and therefore, the prosecution can take the stand that the wiretaps are always a necessity. This violates the spirit of the statute.

15
16
17
18
19
20
21
22
23
24
25

That said, law enforcement had cooperating defendants from a previous case and multiple confidential sources who had already collected information, according to the affidavit. In attempting to justify the necessity of the wiretap, the affiant states "these investigative avenues have been useful, they have not revealed the full scope of HANSON's criminal activities, nor have they produced sufficient evidence to identify the location of his illegal proceeds, nor to identify and successfully prosecute all the members of his criminal enterprise . . ."

26
27
28

This is a disingenuous statement in that, as detailed by the affidavit,

7

as to this particular alleged conspiracy, they knew exactly who was involved and had obtained a plethora of evidence.

The use of conclusory statements such as "based on my training and experience" and all that was stated previously in the affidavit, of which, there is only one reference to Mr. ORTEGA, will concern the specifics of the "Criminal Activity," thwarts the spirit of the statute. *See, United States v. Spagnuolo,* 549 F.2d 705, 710 (9th Cir. 1977).

At some point there must be a circumscribing of the goals for a wiretap application or the necessity requirement becomes meaningless. If the goal is to gather everything about "criminal activity" anything could be justified as being necessary. This application, therefore, violates the statute and this Court should suppress any fruits of it.

2. Subsequent Application and Affidavit of 9/23/14

The government must satisfy the necessity requirement every time it seeks a wiretap. *United States v. Carneiro,* 861 F.2d, 1181 (9th Cir. 1988). With each successive wiretap, the government must always consider whether normal investigative procedures could be used effectively, particularly in light of any evidence obtained as a result of each succeeding wiretap. *Castillo-Garcia, supra*, 117 F.3d at 1196.

Thus, a specific showing of necessity is essential not only to an initial request for wiretap authority, but for each ensuing application for extension. The failure to adequately establish why other investigative techniques could not have been used, as to the extension requests, and as to the particular target intercepted, was held inadequate to justify interception after the first authorization. *United States v. Blackmon*, 273 F.3d 1204 1206-1211(9th Cir. 2001). The court noted that generic rationales, in language nearly identical to that herein, and which would apply in almost all narcotics cases, is not sufficient. *Id* at 1210, 1211.

This application sought authorization to intercept, for another thirty day period, the same requested in the initial application.

Everything detailed in the Smaldino affidavit verified what was already known at the time of the first application. There was, therefore, no necessity for the subsequent wiretap.

**C. The government failed to comply with 18 U.S.C. section 2518 (5) minimization requirement in the execution of defendant's wiretap.**

1. The Government's minimization procedures were unreasonable.

Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be

9

conducted in such a way as to minimize the interception of communications not otherwise subject to interception. 18 U.S.C. section 2518(3).

Minimization requires that the government adopt reasonable measures to reduce the interception of conversations unrelated to the criminal activity under investigation to a practical minimum while permitting the government to pursue legitimate investigation. *United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir. 1990).

Government agencies adopt reasonable procedures where "monitoring agents were instructed on the requirements and need for minimization. They were also required to read and sign a typed copy of minimization guidelines." *United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir. 1990).

Minimization procedures were also found to be valid where the judge met with agents to discuss each agents' responsibilities; where each agent was asked to read and sign an interception order which contained the minimization language of the statute." *See United States v. Chavez*, 533 F.2d 491, 493 (9th Cir. 1976).

The relevant wiretap applications in this case contained standard

10

boilerplate language regarding minimization. Though Mr. Smaldino states that all personnel who participate in the interception process will be instructed about "minimization" and the procedures required, there is no clear way to determine how the monitoring agents were instructed and whether or not they abided by the instructions.

In failing to establish reasonable procedures for minimization, the government sought, and was granted, unbridled latitude. Because the burden is on the government to prove proper minimization, which includes proper procedures in place prior to the interceptions, and has not met this burden in the present matter, the intercepted conversations must be suppressed.

2. The government failed to minimize telephone calls which were clearly unrelated to illegal or criminal activities.

As set forth in *U.S. vs. Turner*, 528 F.2d 143 at 156, "where it is clear that the minimization provision of the order was disregarded by the government throughout the period covered by the order, a total suppression might well be appropriate." The fact that the government intercepted almost every telephone call in this case without minimization clearly warrants suppression of the wiretaps.

11

**D. The authorizations for the applications for orders for the interceptions of wire or oral communications, challenged here, do not comply with the statutory requirement of Title III, 18 U.S.C. 2516(1).**

The attorney general's designation of authority was not special or specific; and so, all intercepted wire or oral communications must be suppressed because they were unlawfully intercepted and the orders of authorization or approval under which they were intercepted were insufficient on their face. 18 U.S.C. 2518(10)(a)(i)(ii).

1. Statutory Provisions and Legislative History

Section 2516(1) of Title III provides that the attorney general may authorize an application for a wire order. It further provides that the attorney general may "specially designate" this authority. As originally enacted in 1968, the statutory designation provision stated: the attorney general "or any Assistant Attorney General 'specially' designated by the Attorney General."

The legislative history on this provision states:

"Paragraph (1) provides that the Attorney General, or any Assistant Attorney General of the Department of Justice "specifically" designated by him, may authorize an application for an order authorizing the interceptions

of wire or oral communications. This provision centralizes in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques. Centralization will avoid the possibility that divergent practices may develop. Should abuses occur, the lines of responsibility lead to an identifiable person. This provision in itself should go a long way toward guaranteeing that no abuses will happen."[1]

In 1984, Section 2516(1) was amended to read as follows:

> Paragraph (1) provides that: "The Attorney General, Deputy Attorney General, Associate Attorney General…"

In 1986, Section 2516(1) was amended to read as follows:

> Paragraph (1) provides that: The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney…[2]

> In 2006, Section 2516(1) was amended as follows: Paragraph (1) provides that: "The Attorney General, Deputy Attorney General, Associate Attorney General, any acting Assistant Attorney General,

---

[1] S. Report 90-1097 at 2185. The Senate Report is the primary legal history on Title III. Page references are to the U.S.C.A. version.

[2] Pub.L. 99-508.

13

or any Deputy Assistant Attorney General or acting Deputy Assistant

Attorney General in the Criminal Division or National Security

Division specially designated by the Attorney General…"

The current version reads:

"The Attorney General, Deputy Attorney General, Associate Attorney

General, or any Assistant Attorney General, any acting Assistant

Attorney General, or any Deputy Assistant Attorney General or acting

Deputy Assistant Attorney General in the Criminal or National

Security Division specially designated by the Attorney General, may

authorize an application to a Federal judge of competent jurisdiction

for, and such judge may grant in conformity with section 2518 of this

chapter an order authorizing or approving the interception of wire or

oral communications by the Federal Bureau of Investigation, or a

Federal agency having responsibility for the investigation of the

offense as to which the application is made, when such interception

may provide or has provided evidence of…"

Section 2518(1)(a) provides that an application for a wire order must

include "the identity … of the officer authorizing the application".

The legislative history on this provision states: Subparagraph (a)

14

requires the identity of the person who makes, and the person who

authorizes the application to be set out. This fixes responsibility."[3]

Section 2518(4)(d) provides that a wire order "shall specify – the

identity of the agency authorized to intercept the communications, and of

the person authorizing the application…."

The legislative history on this provision states: "Subparagraph (d)

requires that the order note…the person who authorized the application so

that responsibility will be fixed."

2. <u>Material Facts Relating To the Attorney General's Delegation</u>
<u>and the Authorizations</u>

The delegation of the attorney general is the same for all the wire

orders at issue in this motion. As presented in discovery; each application

was accompanied by a copy of the same Attorney General Order of

Special Designation dated February 26, 2009 and the same Memorandum

of Authorization for interception order application dated September 19,

2014.

The attorney general delegation of the power to authorize

applications for wiretap orders, approves applications to a federal judge for

---

[3] S. Report 90-1097 at 2189.

15

orders authorizing or approving the interception of wire and oral communications when such interception may provide any evidence of any of the offenses specified in Section 18 USC 2516. This delegation designates the following attorneys to exercise this power:

"1. The Assistant Attorney General in charge of the Criminal Division, any Acting Assistant Attorney General in charge of the Criminal Division, any Deputy Assistant Attorney General of the Criminal Division, any acting Deputy Assistant Attorney General of the Criminal Division;

2. The Assistant Attorney General for National Security, any Acting Assistant Attorney General for National Security, any Deputy Assistant Attorney General for National Security, and any Acting Deputy Assistant Attorney General for National Security, with respect to those matters delegated to the supervision and responsibility of the Assistant Attorney General for National Security. These officials of the National Security Division shall exercise authority through, and in full coordination with, the Office of Enforcement Operations within the Criminal Division."

The Supreme Court, early on, "concluded that Congress, in 18

U.S.C. s 2516(1), made preliminary approval of submission of wiretap applications a central safeguard in preventing abuse of this means of investigative surveillance, and intentionally restricted the category of federal officials who could give such approval to only the Attorney General himself or any Assistant Attorney General he might specially designate for that purpose. Hence, failure to secure approval of one of these specified individuals prior to making application for judicial authority to wiretap renders the court authority invalid and the interception of communications pursuant to that authority 'unlawful' within the meaning of 18 U.S.C. §2518(10)(a)(i)." *United States v. Chavez*, 416 U.S. 562, 571, 94 S. Ct. 1849, 1854, 40 L. Ed. 2d 380 (1974).

In *U. S. v. Giordano*, 416 U.S. 505, 515-16, 94 S. Ct. 1820, 1827, 40 L. Ed. 2d 341 (1974), the Court noted that "the language of the Justice Department recommendation was incorporated verbatim in all subsequent proposals and became part of S. 917 which contained the text of Title III as it was eventually enacted by the Congress. The Senate Report, in referring to §2516(1) further reveals the concern of Congress in limiting the individuals who might authorize wiretap applications. It states:

Paragraph (1) provides that the Attorney General, or any

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Assistant Attorney General of the Department of Justice

specifically designated by him, may authorize an application for

an order authorizing the interception of wire or oral

communications. This provision centralizes in a publicly

responsible official subject to the political process the

formulation of law enforcement policy on the use of electronic

surveillance techniques. Centralization will avoid the possibility

that divergent practices might develop. Should abuses occur,

the lines of responsibility lead to an identifiable person. This

provision in itself should go a long way toward guaranteeing

that no abuses will happen. (Emphasis supplied.) 1968

U.S.Code Congr. & Adm. News, p. 2185.

The passage conveys the congressional intention to limit the

initiation of wiretap applications to "a publicly responsible

official subject to the political process." While the Attorney

General and his nine assistants are subject to the "political

process" in that they must be approved by the Senate, the

executive assistant to the Attorney General need not secure

confirmation. He is appointed by and serves at the will of the

18

Attorney General."

*Giordano*, *supra,* 469 F.2d, 522, at 527.

Because of the delicate nature of the power to initiate electronic surveillance applications, the implementation was reserved to designate officials of a certain rank within the Justice Department, those who have been subjected to the political process, that is, Senate confirmation.

"The Act plainly calls for the prior, informed judgment of enforcement officers desiring court approval for intercept authority, and investigative personnel may not themselves ask a judge for authority to wiretap or eavesdrop. The mature judgment of a particular, responsible Department of Justice official is interposed as a critical precondition to any judicial order. The legislative history of the Act supports this view." *Giordano, supra*,  416 U.S. at 515-16.

There is no Supreme Court decision directly on the issue presented. There is circuit authority that the attorney general may designate the authority to authorize a wiretap application by title rather than by name.

In *United States v. Camp*, 723 F.2d 741 (9th Cir. 1984), the court decided that designation to any Assistant Attorney General — there were 9 at the time — was adequate compliance with the statute.

19

In *United States v. Torres*, 908 F.2d 1417 (9th Cir. 1990), *cert. denied*, 498 U.S. 948 (1990), the court, where the designation was to any Deputy Attorney General in the Criminal Division — there were four at the time, decided that the delegation may be by job title rather than by an individual's name, relying on *Camp*.

These decisions contradict the plain language of the statute and legislative intent — particularly *Torres*. As set out above, Congress intended specific designation within a class. Otherwise, the language of "specially" is superfluous.

These cases should be read as the practical attempt to accommodate the facts before the court while staying true to the statute in situations where, given the actual number of individuals within the designation by class, there was both little ambiguity of who had the power and little ambiguity about each individual's responsiveness to the political process. Presently, there are multiple individuals within the class designation here by the attorney general who are not directly responsive to the political process.

The specificity command becomes more important when the class is broadened to include individuals not directly responsive to the political

20

process. The Attorney General, Deputy Attorney General, the Solicitor General, and the now multiple Assistant Attorney Generals are appointed by the President with the advice and consent of the Senate. Deputy Attorney Generals, are not so appointed or confirmed, rather they are employees of the Department of Justice. 28 U.S.C. §§ 503, 504, 504a, 505, 506.

**E. The authorizations for all the applications for orders for the interceptions of wire or oral communications, challenged here, do not comply with the statutory requirement of Title III, 18 U.S.C. 2518(1)(a) and (4)(d).**

The identity of the persons who bore the responsibility for approval of the wire applications was not clearly set out; and so, all intercepted wire or oral communications must be suppressed because they were unlawfully intercepted and the orders of authorization or approval under which they were intercepted were insufficient on their face. 18 U.S.C. 2518(10)(a)(i)(ii).

1. Clear Identification of Approving Official

The Supreme Court stated:

"There is little question that §2518(1)(a) and (4)(d) were intended to

21

make clear who bore the responsibility for approval of the submission of a particular wiretap application. Thus, the Senate Report accompanying the favorable recommendation of Title III states that §2518(1)(a) 'requires the identity of the person who makes, and the person who authorized the application to be set out. This fixes responsibility.' S.Rep.No.1097, 90th Cong., 2d Sess., 101 (1968), U.S.Code Cong. & Admin.News, p. 2189. And §2518(4)(d) 'requires that the order note the agency authorized to make the interception and the person who authorized the application so that responsibility will be fixed.' Id., at 103, U.S.Code Cong. & Admin.News 1968, p. 2192." *U. S. v. Chavez*, 416 U.S. 562, 571-72, 94 S. Ct. 1849, 1854, 40 L. Ed. 2d 380 (1974).

The authorizations are a printed form under Leslie R. Caldwell's name, but without his signature, and each one at issue here, is signed by Deputy Assistant Attorney General for the Criminal Division Kenneth A. Blanco. As a result, one cannot tell who the responsible person is for the authorization.

> 2. <u>All the orders authorizing the interception of wire, oral, and electronic communications violate the Fourth Amendment</u>

The interceptions permitted were not particularly described, and so,

all the interceptions must be suppressed under the Fourth Amendment; and all the wire orders, challenged here, violate Title III for these same reasons, and so, all intercepted wire, oral, and electronic communications must be suppressed because the communications were unlawfully intercepted and the interception orders were insufficient on their face, 18 U.S.C. 2518(10)(a)(i)(ii).

The Fourth Amendment requires that a search warrant must "particularly describe . . . the place to be searched, and the persons or things to be seized." "General searches have long been deemed to violate fundamental rights. It is plain that the amendment forbids them. …. The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant". *Marron v. United States*, 275 U.S. 192, 196 (1927).

"The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents. *See Massachusetts v. Sheppard*, 468 U.S. 981, 988, n. 5, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) ("[A] warrant that fails to conform to the particularity requirement of the

23

Fourth Amendment is unconstitutional").ᵗ" *Groh v. Ramirez*, 540 U.S. 551, 557, 124 S. Ct. 1284, 1289-90 (2004).

Under the Fourth Amendment, "[t]he need for particularity and evidence of reliability in the showing required when judicial authorization of a search is sought is especially great in the case of eavesdropping. By its very nature eavesdropping involves an intrusion on privacy that is broad in scope." *Berger v State of New York*, 388 U.S. 41, 56, 87 S.Ct. 1873 (1967). And so, the particular descriptions must be "precise and discriminate" and "carefully circumscribed" so that "nothing is left to the discretion of the officer executing the warrant" so as to prevent general searches. *Id.* 388 U.S. at 57-58.

Title III requires an interception order to specify the location or facilities to be monitored "the identity of the persons, if known, whose communications are to be intercepted," and "a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates . . . ." The order must therefore "link up specific person, specific offense, and specific place, . . . to meet the test of the Constitution that electronic surveillance techniques be used only under the most precise and discriminate circumstances, which fully comply with

24

the requirement of particularity." 18 U.S.C.A. §2518(4).

The command of the minimization provision—that every interception order "shall contain a provision that [monitoring] shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter"—must be read in light of these constitutional and statutory mandates. 18 U.S.C.A. §2518(5).

The phrase "communications not otherwise subject to interception" must, therefore, refer to conversations "not particularly described" in the order, if it is to have any meaning at all.

All the interception orders find probable cause of all offenses listed in 18 U.S.C. 1961. Probable cause was not presented for that full range of offenses. All the interception orders authorize the interception of communications within Title III. The scope of offenses included in RICO is very large. The scope of offenses included in Title III is broader still. The offenses actually put in issue by the applications is a narrow slice of the offenses included in RICO and still a narrower slice of the offenses included in Title III.

The orders are unconstitutional and violate the statute and all interceptions must be suppressed. *Groh v. Ramirez, supra*.

**F. All the applications for orders for the interception of wire, oral and electronic communications violate Title III, 18 U.S.C. 2518(1)(e)**,

A "full and complete statement of the facts concerning all previous applications" is not set out; and so, all intercepted wire, oral, and electronic communications must be suppressed because the communications were unlawfully intercepted and the interception orders were insufficient on their face, 18 U.S.C. 2518(10)(a)(i)(ii); and, because the interceptions were based on applications, affidavits, and which do not meet Fourth Amendment standards.

The Fourth Amendment requires that electronic surveillance be conducted such that the invasion of privacy involved is no greater than is necessary under the circumstances. The various necessity and minimization provisions of Title III exist in an attempt to meet this constitutional standard.

"Only last Term we sustained the validity of such an authorization, holding that, under sufficiently 'precise and discriminate circumstances,' a federal court may empower government agents to employ a concealed electronic device 'for the narrow and particularized purpose of ascertaining the truth of the allegations' of a 'detailed factual affidavit alleging the

26

commission of a specific criminal offense.' *Osborn v. United States*, 385 U.S. 323, 329-330, 87 S.Ct. 429, 433, 17 L.Ed.2d 394 (1996). Discussing that holding, the Court in *Berger v. State of New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), said that 'the order authorizing the use of the electronic device' in *Osborn* 'afforded similar protections to those of conventional warrants authorizing the seizure of tangible evidence.' Through those protections, 'no greater invasion of privacy was permitted than was necessary under the circumstances.' *Id*., at 57, 87 S.Ct. at 1882.16". *Katz v. United States*, 389 U.S. 347, 354-56, 88 S. Ct. 507, 513-14, 19 L. Ed. 2d 576 (1967); the "necessity requirement exists in order to limit the use of wiretaps, which are highly intrusive." *See also, U.S. v. Bennett*, 219 F.3d 1117, 1122 (9th Cir.2000).

Section 2518(1)(e) provides:

"(1) Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

(e) a full and complete statement of the facts concerning all

27

previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire, oral, or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application."

The legislative history provides:

"Section 2518(1)(e) …will serve to insure that extended surveillance is not undertaken lightly. This provision will serve to insure that it is not unthinkingly or automatically continued without due consideration."

In all of the orders, affidavits, and applications at issue here; a statement regarding other wiretap investigations is made in the affidavit and a list of the prior wiretap orders is attached to the affidavit. Each application states that the applicant has examined the affidavit and incorporates the affidavit into the application.

Paragraph 8 of the application presented for the first wire order in this case July 24, 2012 states that "[t]he attached affidavit contains a full and complete statement of facts concerning all previous applications ...." Paragraph 104 of the affidavit presented in support of the first wire order in this case of July 24, 2012 states that several of the Target Subjects were

intercepted in several earlier wiretaps, referencing attachment B and states further that "[w]hile these intercepted conversations have proved helpful, either the Target Subjects of our investigation are on the periphery of those investigations or Target Subjects on the periphery of our investigation were the focus in those investigations" and [w]hile such intercepts are useful, such limited interceptions alone will not achieve the goals of this investigation."

The affidavit merely states, in a conclusory fashion, that, while prior interceptions have proved helpful and useful, they are inadequate to the goals of the investigation. The attachment provides nothing more than the date and count of the prior orders and the names of the present targets previously intercepted.

The statute mandatorily requires "a full and complete statement of the facts concerning all previous applications." The facts set forth regarding the prior applications are plainly not full and complete.

Reading the statute as an integrated entirety; the requirement of "a full and complete statement of the facts concerning all previous applications" is essential to the application of the necessity showing required by 18 U.S.C. 2518(1)(C), the judicial determination of necessity

29

required by 18 U.S.C. '2518(3)(C), the operation of the derivative evidence provision of 18 U.S.C. 2518(10)(a), and the application of the minimization requirement of 18 U.S.C. 2518(5).

The ninth circuit has stated that the purpose of the 2518(1)(e) requirement is – "The requirement seeks to ensure that the judge receives a full and complete report with respect to previous interceptions and the extent of information obtained thereby so that he can decide whether there is need for the further interception sought and whether there is probable cause to believe that further interception would provide seizable evidence. It is revelation of information that this paragraph seeks,…" *United States v. Turner*, 528 F.2d 143, 153 (9th Cir. 1975).

This Court should suppress all the interceptions under the Fourth Amendment and Title III.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

30

## III.

## CONCLUSION

Defendant respectfully requests based on the arguments above, that all evidence from the challenged wiretaps as to Mr. ORTEGA be suppressed along with any other evidence that was the product of these wiretaps.

DATE: July 7, 2016            /s/ Michael L. Crowley
                              Michael L. Crowley, Esq.
                              Crowley Law Group, APC
                              Attorney for Defendant #23
                              DANIEL ORTEGA

M:\Large Case Files\Ortega, Daniel\Ortega, Daniel - Wiretap suppression P & A.wpd